Douglas F, Cushnie
P.O. Box 500949
Saipan MP 96950
Telephone: (670) 234-6830
Facsimile: (670) 234-9723
E mail: abogados@pticom.com

Attorney for: Plaintiff

**IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| EMERENCIANA PETER-PALICAN,<br><br>                  Plaintiff,<br><br>vs.<br><br>GOVERNMENT OF THE COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, and TIMOTHY P. VILLAGOMEZ, in his official and individual capacities,<br><br>                  Defendants. | CIVIL ACTION NO. 07-0022<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date : February 28, 2008<br>Time: 9:00 AM<br>Judge: A. Munson |

**I. Introduction.**

      Plaintiff was hired as the Special Assistant to the Governor for Women's Affairs on April 5, 2002, by former governor Juan N. Babauta. (Ex. 1). The position was created by Article III, § 22 of the Commonwealth Constitution. The Constitution provides that the holder of that position may be removed only for cause. On January 8, 2006 plaintiff was informed by defendant Timothy P. Villagomez, Acting Governor, that her employment in the position as special assistant for women's affairs was ended (Ex. 5), and to vacate her office by April 8, 2006. (Plf. Decl., ¶ 11)   While plaintiff has pled that she was terminated from her employment without cause, (Comp. ¶ 15), the government contends that plaintiff's employment terminated as a matter of course based upon personnel actions issued. (Ex.7, Def's Ans. To Interrogatories, No. 1)**.** For the purpose of this motion plaintiff accepts defendant's asserted basis for her termination from employment.

## II. Standard of Determination.

A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for the motion and identifying those portions of the record which establish the absence of a genuine issue of material fact. *Celotex Corporation v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2453, 91 L.Ed.2d 265 (1986)

A motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed2d 202 (1986); Rule 56(c) Com.R.Civ.P.  In order to overcome a motion for summary judgment, the non-moving party must show that there are genuine factual issues that can only be resolved by a trier of fact because they may reasonably be resolved in favor of either party. *Anderson* v. *Liberty Lobby, Inc. (supra)*.  The non-moving party must establish the existence of material facts to which there is a genuine issue by affidavit or as otherwise provided by Rule 56 F.R.C.P.  Absent any probative evidence tending to support a claim, mere assertions of a dispute will not preclude the granting of summary judgment.  The non-moving party must assert more than a mere metaphysical claim. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).   The court must view the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. (supra)*.

## III. Material Facts To Which There Is No Genuine Issue.

There are no genuine issues with respect to the following material facts:

1. Plaintiff was hired by letter dated April 5, 2002 as the Special Assistant to the Governor for Women's Affairs, effective April 8, 2002.  (Ex. 1).

2. Plaintiff received a letter dated February 6, 2006, from Timothy P. Villagomez, Lieutenant Governor of the Commonwealth that her employment as the special assistant had terminated.  (Ex. 5; Ans.¶ 10).

3. Plaintiff was ordered to vacate her office by April 8, 2006.  (Ex.5; Ans.¶ 11)

4. Plaintiff did vacate her office. (Aff. of Plf. ¶ 12).

5. The government issued personnel actions regarding plaintiff's employment. (Ex.2, 3, 4)

6. Plaintiff did not sign any personnel actions or forms represented to her that limited her term of employment. (Aff. of Plf. ¶ 7).

7. Plaintiff was not terminated for cause. (Aff. of Plf. ¶ 10; Def. Ans. To Interog No. 1, Ex. 7).

**IV. Discussion.**

    **A. Plaintiff May Be Terminated Only For Cause.**

Emereciana Peter-Palican (Emi), plaintiff herein, by letter dated April 5, 2002 was appointed by former Governor Juan N. Babauta, pursuant to Article III, Section 22 of the Commonwealth Constitution to the position of Special Assistant for Women's Affairs. The appointment took effect April 8, 2002. (Ex. 1).

Article III, Section 22 of the Constitution reads in pertinent part as follows:

> "a) There is hereby established an Office of Special Assistant to the Governor for Women's Affairs. The governor shall appoint a person, who is qualified by virtue of education and experience, to be the special assistant. <u>The special assistant may be removed only for cause.</u>" (Emphasis Supplied).

The Ninth Circuit follows the plain meaning rule with respect to statutory construction. The starting point in construing a statute is the language of the statute. If the language is unambiguous, in the absence of legislative intent to the contrary, the language is ordinarily regarded as conclusive. *U.S. v. Buckland,* 289 F.3d 558 (9th Cir. 2002). See also *Ronald Moran Cdillac, Inc. v. U.S.*, 385 F.3d 1230, 1232, 1235 (9th Cir. 2004); *U.S. v. W.R. Grace,* 493 F.3d 1119, 1134 (9th Cir. 2007). This court has also followed the rule. *U.S. v. Fleming*, 2004 WL 1773865 (D.C.N.M.I. 2004). The Commonwealth also follows the plain meaning rule. *Town House, Inc. v. Saburo*, 2003 MP 2, 6 N.M.I. 529, 531 (2003); *Northern Mariana Islands v. Taisacan*, 1999 MP 8, 5 N.M.I. 236 (1999).

The plain meaning of the last sentence of Article III, Section 22 a) is that termination is only for cause. There are no provisos, conditions, exceptions, or "but for" language.

This being a constitutional provision it does not appear that any statute, rule, regulation or policy of the government is available to modify, much less overrule this clear constitutional standard.

Notwithstanding the foregoing, it is anticipated that the government will raise two issues in an attempt to negate the clear constitutional language. The first issue relates to the personnel actions cut in order to permit Emi to receive her salary. See Exhibits 2 and 3. Neither Exhibit 2, the "Request For Personnel Action", nor Exhibit 3 the "Notification of Personnel Action" are of sufficient legal import to negate the clear language of Governor Babauta's appointment "pursuant to Article III, Section 22 of our Constitution". (Ex.1). The second issue relates to the "Conditions of Employment" (Ex. 4). Paragraph 10 of the employment conditions refers to gubernatorial appointees. Paragraph 10(A)(1) purports to establish that a gubernatorial appointee serves at the pleasure of the governor and may be terminated "without cause and without prior notice." This provision is not only in conflict with the constitutional provisions underlying Emi's appointment, but other constitutionally established positions as well.

Article III, Section 21 is a general provision relating to gubernatorial appointments to boards, commissions, agencies, public corporations, and so forth. That section provides in part, relating to terminations:

> "...the members of such a board or commission shall be independent and may be removed only on rounds of gross neglect or dereliction of duty, breach of fiduciary duty, conviction of a felony, or mental or physical incapacity."

Article III, Section 23 provides for gubernatorial appointment of a resident executive for indigenous affairs. The termination provision found within subsection a) provides as follows:

> "The resident executive may be removed as provided in N.M.I. Const. art. II, §8, of this Constitution for incompetence, neglect of duty, commission of a felony, treason, or corruption."

Assuming the government takes the position anticipated, it must argue that three separate constitutional provisions specifically addressing termination of a gubernatorial

appointee are trumped by a set of employment conditions.

The government is also expected to argue that the concept of termination only for cause, which may create an appointment beyond the appointing governor's term is in someway not reasonable. That is, no appointment should be permitted to extend beyond the term of the appointing governor.  There are two points to be made here.  First, Article III, Sections 21 and 23 both clearly provide for terms to extend beyond that of the appointing authority and for termination of those terms to be only for cause.  It should be noted that sections 21, 22 and 23 of Article III were all addressed at the second constitutional convention.  It seems reasonable to believe that the constitution drafters and subsequently the voters were aware of what they were doing.  Second, and most tellingly is the history of the creation of the position of special assistant for women's affairs.  While Emi contends that in light of the clear statement within the constitution regarding termination for cause, that reliance on the legislative history of the Article II, Section 22 is not necessary, an examination of that history is totally in accord with Emi's position.  Attached to the declaration of Herbert del Rosario, Director of CNMI Archives is the initial proposal to establish the office of special assistant for women's affairs.  The first section reads:

> "The Governor shall appoint a Special Assistant for Women's Affairs. Such a person, <u>who shall serve at the pleasure of the governor</u>, shall be a woman with standing in the community."  (Emphasis Supplied)

The proposal was considered at a public hearing, received favorable testimony and was amended "to reflect the recommendations and concerns expressed by the witnesses." (Decl. Of H. del Rosario, ¶ 3.B, ¶ 2 of committee report).   The provision regarding service at the pleasure of the governor was obviously deleted as a result of the committee hearings.  It is clear that the issue of termination was directly considered by the delegates to the second constitutional convention and a decision was made to permit termination only for cause.

### B.  The Government Is Estopped From Arguing Termination Is Available For Other Than Cause.

The issue argued in Discussion IV.A, above, if decided favorably to Emi, will negate

the need to consider the argument set forth here.  The estoppel argument set forth below is contained in Emi's fourth cause of action, while the constitutional issue discussed above is within the first cause of action.

Emi was appointed to the position of Governor's Special Assistant For Women's Affairs by letter dated April 5, 2002, the appointment being effective April 8, 2002.  The appointment was specifically pursuant to Article III, Section 22 of the Commonwealth Constitution.  Subsequent to that appointment personnel actions were cut providing for her pay, the Request For Personnel Action being finally signed June 3, 2002 (Exhibit 2) and the Notification of Personnel Action being signed June 4, 2002.  (Exhibit 3).  Emi signed conditions of employment May 25, 2002.  (Exhibit 4).

Trial began in Civil No. 00-0024, June 10, 2002 (See Docket No. 58).  This case involved the unlawful termination of Emi by the CNMI and resulted in a jury verdict in her favor on June 14, 2002 (See Docket No. 71).  At the conclusion of trial, Judge Munson inquired as to whether there were any other matters to be considered.  Emi said, yes, that she wanted a lateral transfer from her former position to another civil service protected position.  At this point Mr. Dollison informed Emi and the court that her existing special assistant position is protected under the constitution and that she can only be terminated for cause.  Emi said that she did not know that.  (Emi's Decl. ¶¶ 5, 6).  Emi remained in her position as special assistant for women's affairs until ejected without cause by defendant Villagomez.  (Emi's Decl. ¶¶ 8, 10, 11, 12; Decl. of Juan I. Tenorio; Exhibit 5).

Emi's position is that by virtue of the statements of the government's representative in court, she did not press for a civil service protected position, which she previously had, but remained as the special assistant for women's affairs.  Further, the statements after trial by Juan I. Tenorio and Frank Gibson of CNMI personnel confirmed that the holder of the special assistant's position could only be terminated for cause.  (Emi's Answer To First Set of Interrogatories, no. 3).  The government is thus now estopped to change its position regarding the right of termination from the special assistant post.

A claim of estoppel against the government is cognizable in the Commonwealth.  *In*

*re. Blankenship*, 3 N.M.I. 209, 213 (1992); *Aquino v. Tinian Cockfighting Board*, 3 N.M.I. 284, 295 (1991); *Ahmed v. Goldberg*, 2001 WL 1842390 (D.C.N.M.I. 2001). The elements of equitable estoppel are: (1) that the party to be estopped suppressed facts, and (2) intended that his conduct be acted upon or that the party asserting estoppel had the right to believe the assertions, (3) that the other party was ignorant of the true state of facts, and (4) relied upon the conduct of the first party to her detriment. *U.S. v. Georgia Pacific Co.*, 481 F.2d 92 (9th Cir. 1970).

The government not only suppressed facts with respect to its conduct, it affirmatively misrepresented the employment status of the Governor's Special Assistant For Women's Affairs. The government clearly intended that these representations be acted upon by inducing Emi to not secure a civil service protected position. Emi was certainly ignorant of the true state of the government's position. Finally she in fact did not attempt to secure a civil service protected position, relying upon the representations of the government representative, both right after trial and in subsequent conversations with personnel officials.

Estoppel has been invoked against the federal government and its officials under various fact situations. In *Fox v. Morton*, 505 F.2d 254 (9th Cir. 1974) a tribal work program was terminated without a hearing prior to termination although requested. The court held that a hearing was required as the program participants were entitled to due process. Estoppel was imposed against the federal government where justice and fair play required it. This latter standard permeates consideration of imposition of estoppel against a government. In *Schuster v. C.I.R.*, 312 F.2d 311 (9th Cir. 1962) the I.R.S. commissioner ruled that certain estate assets were not subject to taxation. The estate trustee then distributed the assets. A year later the commissioner reversed his decision and attempted to tax the distributed assets. The court held he was estopped from doing so. In *U.S. v. Lazy FC Ranch*, 481 F.2d 985 (9th Cir. 1973) partners were involved in a federal soil reserve program that was arguably authorized under federal regulation. The federal government approved certain contracts under this program. Later the partners attempted to withdraw

from the program, but the government refused although at this time it was clear the arrangement was improper under applicable regulations.  The government, however, never informed the partners of this fact.  Where the government later attempted to secure the return of improperly made payments under the False Claims Act the court determined that they were estopped from doing so.  Estoppel will be applied to the federal government where justice and fair play require it.   Estoppel will be applied even though the representation relied upon was concededly unauthorized. *Brandt v. Hickel*, 427 F.2d 53 (9th Cir. 1970).

While the cases cited above are appropriately from the Ninth Circuit, other circuits and states have applied the same doctrine with the same standards.  See *Portmann v. U.S.*, 674 F.2d 1155 (7th Cir. 1982); *Long Beach v. Mansell*, 476 P.2d 423 (Cal. 1970); *Filipo v. Chang*, 618 P. 2d 295 (Hi. 1980).

The representations by both the government attorney and later by officials of personnel caused Emi to forego the job protection to which she was entitled.  While Emi satisfies the elements of estoppel, in the case of estopping the government the issue of justice and fair play appear to be the overriding factors.  Put differently, the government cannot change the rules of the game, rules which it established,  and then say "gotcha".

**Conclusion**

Plaintiff, Emi Palican requests that this court determine that the Commonwealth government wrongfully terminated her in violation of Article III, Section 22 of the Commonwealth Constitution, and if necessary, determine that the government is estopped from asserting that such termination was lawful.

Dated this 16th day of January, 2008.

                         DOUGLAS F. CUSHNIE
                Attorney for Emerenciana Peter-Palican

                            /s/
                        DOUGLAS F. CUSHNIE