David Lochabay
Asst. Attorney General
OFFICE OF THE ATTORNEY GENERAL
2nd Fl., Juan A. Sablan Admin. Bldg.
Capital Hill
Caller Box 10007
Saipan, MP 96950
Tel: (670) 664-2341
Fax: (670) 664-2331
E-mail: lochabay@justice.com

Attorneys for Defendants

**IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| EMERENCIANA PETER-PELICAN ) | CIVIL ACTION NO. 07-0022 |
| **Plaintiff,** ) | MEMORANDUM IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT |
| v. ) | |
| GOVERNMENT OF THE COMMONWEALTH OF THE and TIMOTHY VILLAGOMEZ, in his official and individual capacities, ) | |
| **Defendants** ) | Hearing Date: February 28, 2008<br>Time: 9:00 a.m.<br>Judge: A. Munson |

**COMES NOW** Defendants the CNMI Government and Timothy Villagomez, who would now present to the Court this Memorandum in opposition to Plaintiff's Motion for Partial Summary Judgment and in support of Defendants' Cross-Motion for Summary Judgment.

Defendants would show the Court the following:

## I. STANDARD

The party seeking summary judgment bears the initial burden of informing the court the basis for the motion and identifying those portions of the record which establish the absence of any genuine issues of material fact. *Celotex Corporation v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Anderson*

1

2  *v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Rule 56, Fed.R.Civ.Proc.

3  To defeat a motion for summary judgment, the non-moving party must show that there are disputed genuine issues of material fact. *Anderson v. Liberty Lobby, Inc. (supra)*. The non-moving party must establish the existence of disputed material facts by affidavit or as otherwise provided by Fed.R.Civ.Proc. 56. Mere assertions of a dispute will not preclude summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

8  The court must view the evidence and draw any permissible inferences in favor of the non-moving party. *Id.*

## II. REMOVAL FOR CAUSE

11  The gravamen of Plaintiff's Complaint is that she was unlawfully removed, without cause and without any kind of hearing, from her job as Special Assistant for Women's Affairs, and that this was a violation of her constitutional rights under the First, Fifth, and Fourteenth Amendments to the U.S. Constitution.

15  **In relevant part, CNMI Constitution, Art. III, § 22, reads as follows:**
> "(a) There is hereby established an Office of Special Assistant to the Governor for Women's Affairs. The governor shall appoint a person, who is qualified by virtue of education and experience, to the special; assistant. The special assistant may be removed only for cause."

19  **The entire case revolves around the meaning of the last sentence above; "The special assistant may be removed only for cause."**

21  **Plaintiff urges the Court to apply the "plain meaning" rule, which courts apply when the language of a statute is plain and unambiguous. If the removal for cause phrase is plain and unambiguous, then no interpretation is necessary and the plain meaning rule should be applied in its entirety, including the proviso that the rule is not to be applied where its application would lead to absurd or impractical results. In** *Oregon Natural Resources Council, Inc., v Kantor*, 99 F.3d 334, 339 (CA 9 1996), the court opined:
> "Canons of statutory construction dictate that if the language of a statute is clear, we look no further than that language in determining the statute's meaning." *United States v. Lewis*, 67 F.3d 225, 228 (9th Cir.1995) (citing *Sullivan v. Stroop*, 496 U.S. 478, 482, 110 S.Ct. 2499, 2502-03, 110 L.Ed.2d 438 (1990); *United States v. Ron Pair Enter.*,

> *Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989)); see also *United States v. Neville*, 985 F.2d 992, 995 (9th Cir.), cert. denied, 508 U.S. 943, 113 S.Ct. 2425, 124 L.Ed.2d 646 (1993); *Brock v. Writers Guild of America, West, Inc.*, 762 F.2d 1349, 1353 (9th Cir.1985); *Church of Scientology of California v. United States Dep't of Justice*, 612 F.2d 417, 421 (9th Cir.1979). Therefore we "look[ ] to legislative history only if the statute is unclear." *Lewis*, 67 F.3d at 229 (citing *Blum v. Stenson*, 465 U.S. 886, 896, 104 S.Ct. 1541, 1547-48, 79 L.Ed.2d 891 (1984)). Of course, we do not limit ourselves to the apparent plain meaning of a statute, if doing so leads to " 'absurd or impracticable consequences.' " *Church of Scientology*, 612 F.2d at 421 (quoting *United States v. Missouri Pac. R.R.*, 278 U.S. 269, 278, 49 S.Ct. 133, 136, 73 L.Ed. 322 (1929)); see also *Tovar v. United States Postal Serv.*, 3 F.3d 1271, 1274 (9th Cir.1993); *Heppner v. Alyeska Pipeline Serv. Co.*, 665 F.2d 868, 872 (9th Cir.1981).

As can be seen, when language is plain and unambiguous, resort to legislative history is unnecessary. Plaintiff has urged the Court to consider the legislative history (actually Second Constitutional Convention history) of the provision, which indicates the removal for cause provision replaced an earlier provision that the special assistant would serve at the will of the governor. Defendants have no problem with the Court considering this history, as it is a tacit admission by Plaintiff that the provision is ambiguous. A provision is ambiguous when it is "capable of being understood by reasonably well-informed persons in two or more different senses." 2A Sutherland Statutory Construction, 6th Ed., § 45.02, pp. 11-12).

Further evidence that the plain meaning rule is inapplicable is that its application here would lead to "absurd or impractical" results. in that it would have the effect that a cabinet level official, whose duties include advising the governor as to women's issues, and assisting the governor in the formulation of policy for those issues, would have essentially lifetime tenure. Such a position does not exist in the Federal government nor any state government to the knowledge of Defendants. Such a position would be entirely untenable, as different governors would likely have different views as to how to treat women's issues.

Each governor is entitled to pick his own team at this level. No cabinet level governor's appointee survives a change of administrations unless by consent of the incoming administration. The U.S. Supreme Court has recognized that political affiliation can be a legitimate job

1
2   qualification for certain positions. In freedom of speech cases the Court has held that a public
3   official cannot be fired on the basis of his political affiliation unless the nature of his job makes
4   political loyalty a valid qualification; this could be either because the job involves the making of
5   policy and thus the exercise of political judgment or the provision of political advice to the elected
6   superior, or because it is a job that gives the holder access to his political superiors' confidential,
7   politically sensitive thoughts. *Elrod v. Burns*, 427 U.S. 347, 367-68 (1976); *Branti v. Finkel*, 445 U.S.
8   507, 518 (1980).
9       There can be no doubt that the Special Assistant for Women's Affairs had the type of
10  duties that the Supreme Court had in mind. CNMI Const., Art. III, § 22 reads, in its entirety:

> "Section 22: Special Assistant for Women's Affairs.
>
> a) There is hereby established an Office of Special Assistant to the Governor for Women's Affairs. The governor shall appoint a person, who is qualified by virtue of education and experience, to be the special assistant. The special assistant may be removed only for cause.
>
> b) It is the responsibility and duty of the special assistant to formulate and implement a policy of affirmative action in the government and private sector to assist women achieve social, political and economic parity. The special assistant shall promote the interests of women, assist agencies of government and private organizations to plan and implement programs and services for women, monitor compliance of laws and regulations by government agencies and private organizations, organize community education strategies regarding the roles of women, and recommend to the governor and the legislature for consideration legislation of benefit to women.
>
> c) The special assistant may be authorized to hire staff and shall promulgate rules and regulations in carrying out the responsibilities and duties of the office.
>
> d) The governor shall include in the budget of the executive branch the funding necessary to fully implement the provisions of this section.

25  As can be seen, this is a policy making position working closely with the governor.
26  As Plaintiff had duties which fit squarely within the political and policy spheres, interpreting the
27  "for cause" provision in the manner which Plaintiff urges would lead to a most absurd and
28

impractical situation where a governor would have essentially no control over a member of his/her cabinet, a position not found in any American jurisdiction of which Defendants are aware.

B. Civil Service/Mandatory Retirement Age Cases.

No cases were found dealing with cabinet level gubernatorial appointees under similar conditions because no such positions seems to exist elsewhere. However, there are some mandatory retirement age cases which are directly in point. Many states have civil service systems which are established in their constitutions. Many of these systems have removal for cause provisions such as the one at bar. As workers began living and working longer, states began to pass mandatory retirement age statutes. Many of these statutes were opposed by civil service workers who sued to prevent the statute's application to them, relying on constitutional civil service removal for cause provisions.

The Supreme Court of Louisiana decided such a case in *Bonnette v. Karst*, 261 La. 850, 261 So. 2d 589 (La. 1971). That case was a challenge by civil service firefighters, who held their jobs "during good behavior," to a mandatory retirement age statute. The trial court held for the firefighters. The Louisiana Supreme Court was so closely divided that they originally affirmed the trial court decision, then reversed themselves on rehearing, all in the same opinion, stating:

> "On rehearing, we conclude we were in error in construing this isolated phrase ("during good behavior") as conferring lifetime tenure. In the context of the provision in which found and of the firemens civil service enactment as a whole, the phrase simply means that the firemen shall not be removed except for cause during their civil service tenure."

Id., at 601.

On rehearing, the court found the "during good behavior" phrase to be ambiguous, which they had refused to do in the original opinion (which, in and of itself, proves ambiguity). Id., at 602.

The court later opines:
> "Other jurisdictions have been faced with similar contentions that subsequent mandatory retirement legislation unconstitutionally or illegally curtailed civil service tenure. They have almost uniformly

5

> held that civil service status was not intended to confer lifetime employment upon the employee; that it was only protection for faithful and obedient public service and against dismissal during normal tenure, except as based upon misconduct or incompetence and that civil service tenure protection was not violated by a general nondiscriminatory and reasonable age limitation subsequently enacted, despite governing provisions that the tenured employee could be removed only for cause. *Coopersmith v. City and County of Denver*, 156 Colo. 469, 399 P.2d 943 (1965); *Jordan v. Metropolitan Sanitary District*, 15 Ill.2d 369, 155 N.E.2d 297 (1959); *Boyle v. City of Philadelphia*, 338 Pa. 129, 12 A.2d 43 (1940). See also: *Beynon v. City of Scranton*, 212 Pa.Super. 526, 243 A.2d 190 (1968). Contra: *Reed v. City of Youngstown*, 173 Ohio S. 265, 181 N.E.2d 700 (1962).

> Id., at 605-606.

As can be seen, most jurisdiction do not equate tenure with provisions for removal for cause. The tenure of an office is however long one is authorized to hold it. A removal for cause provision protects an individual from arbitrary removal during the time the office is held, but does not determine the tenure of the officeholder.

It should be noted that there is nothing in the constitutional provision creating the office of Special Assistant for Women's Affairs which prohibits a governor from appointing a Special Assistant for a set term. Even if the language of the statute could be interpreted in such a manner as to create a position which could withstand a change of administrations, that is not the case before the Court. The case here is one in which Plaintiff was appointed for a specific term, and served her full term.

Defendants are entitled to judgment as a matter of law on this claim.

C. Plaintiff was not terminated or removed.

Plaintiff repeatedly complains that she was "terminated." Plaintiff was not terminated. She was initially asked to leave her office because of the change of administrations. Ex. 5. When she hesitated, the new administration did not push the matter, but, in an effort to avoid this very lawsuit, chose to wait until her term of office, as expressed in the papers documenting her hiring, had expired. Ex. 5. Those papers consist of the letter from Governor Babauta appointing her (Ex.1), a Request for Personnel Action (Ex. 2), "Conditions of Employment (Local Hire)" (Ex. 4),

culminating in a Notification of Personnel Action (Ex. 3). These papers conclusively show that Plaintiff's appointment was for the period commencing 4/8/02 and ending 4/8/06, a period approximately coinciding with the term of Governor Babauta.

Thus, Plaintiff was not terminated. Her term of office had simply expired.

### III. 42 U.S.C. § 1983

To the extent Plaintiff seeks monetary relief directly against the CNMI or against Defendant Villagomez in his official capacity for violation of her rights under the U.S. Constitution by bringing an action under 42 U.S.C. § 1983, Defendant CNMI and Defendant Villagomez, in his official capacity, are entitled to summary judgment as a matter of law.

Neither the CNMI nor any official acting in his or her official capacity is a "person" for purposes of monetary damages liability under 42 U.S.C. § 1983. *Aguon v. Commonwealth Ports Auth.*, 316 F.3d 899, 901 (CA9 2003); *DeNieva v. Reyes*, 966 F.2d 480, 483 (CA9 1992); *Ngiraingas v. Sanchez*, 495 U.S. 182, 192 (1990) (in a suit for money damages, neither Guam nor its officers acting in their official capacity are "persons" under section 1983). And while local officials sued in their official capacities may be sued for injunctive relief, the CNMI itself may not be sued for either injunctive or monetary relief under section 1983. *Aguon*, 316 F.3d at 904 n.2; *DeNieva*, 966 F.2d at 483 n.3.

Defendants are entitled to judgment as a matter of law on these claims.

### IV. First Amendment

Plaintiff avers in her Second Cause of Action that she was "terminated from her position as Special Assistant for Women's Affairs for exercising her First Amendment rights." Complaint, ¶¶ 19-22.

Defendants' Interrogatory No. 6 to Plaintiff inquired:
> "State all facts which support your claim that you were terminated for exercising your First Amendment rights." Ex. 8.

Plaintiff responded:
> "I was very active and vocal in the gubernatorial campaign which Governor Fitial won. I supported Governor Babauta publicly, attending and participating in rally's (sic), street demonstrations, and soliciting

7

1
2          votes." Ex. 9.

3   It is black letter law that a movant for summary judgment must present facts to support each and
4   every element of its case. In fact, failure to do so leaves a party open to a cross-motion for summary
5   judgment under *Celotex v. Catret*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)
6   ("...F.R.C.P. 56©... mandates the entry of summary judgment, after adequate time for discovery and
7   upon motion, against a party who fails to make a showing sufficient to establish the existence of an
8   element essential to that party's case, and on which that party will bear the burden of proof at trial.");
9   *Eichman v. Fotomat Corporation*, 880 F.2d 149, 161 (CA9 1989).

10  In response to a direct interrogatory seeking facts, Plaintiff has wholly failed to offer any
11  evidence that her advocacy for Governor Babauta was related in any way to the loss of her government
12  position.

13  Defendants are, therefore, entitled to summary judgment as a matter of law on Plaintiff's First
14  Amendment claim.

15                              **V. Fifth Amendment**

16  In Complaint, ¶ 1, Plaintiff states that she is alleging violations of her constitutional rights under
17  the First, Fifth, and Fourteenth Amendments. Plaintiff does not mention the Fifth Amendment otherwise
18  in her Complaint. In any event. the Fifth Amendment is applicable only to the Federal government.

19  Defendants are entitled to judgment as a matter of law on this claim.

20                              **VI. LIBERTY INTEREST**

21  **In Plaintiff's Second Cause of Action, Plaintiff complains that she had a liberty interest in**
22  **continuing employment and that interest has been violated by the CNMI.**

23  **In *Roth v. Veteran's Admin. of Govt. of U.S.*, 856 F.2d 1401, 1410 (CA9 1988), the Court**
24  **states:**

25      "It is well-settled that an individual may have a liberty interest in
        employment protected by the fifth amendment due process clause.
        See, e.g., *Roth*, 408 U.S. at 572-73, 92 S.Ct. at 2706-07; *Merritt v.*
26      *Mackey*, 827 F.2d at 1373 (quoting *Bollow v. Federal Reserve Bank*,
        650 F.2d 1093, 1100 (9th Cir.1981), cert. denied, 455 U.S. 948, 102
27      S.Ct. 1449, 71 L.Ed.2d 662 (1982)). To establish such a liberty
28

> interest, the individual must show both a tangible loss and a "'charge [made by the government] against him that might seriously damage his standing and associations in his community.'" *Stretten v. Wadsworth Veterans Hosp.*, 537 F.2d 361, 365 (9th Cir.1976) (quoting *Roth*, 408 U.S. at 573, 92 S.Ct. at 2707)."

Plaintiff has wholly failed to produce any evidence, by affidavit or otherwise, which would show that the Commonwealth has made any charge against her that might seriously damage her standing and associations in the community. Indeed, the undisputed evidence is that the Commonwealth has not made any kind of charge whatsoever against Plaintiff. See also *Gray v. Union County Intermediate Educ. Dist.*, 520 F.2d 803 (9th Cir. 1975) (deliberate undermining of social agencies, insubordination, incompetence, hostility toward authority, and aggressive behavior held not to import serious character defects such as dishonesty or immorality necessary to state claim of liberty interest violation).

Defendants are entitled to judgment as a matter of law on this claim.

## VII. PROPERTY INTEREST

In Complaint, ¶¶ 16-17, Plaintiff complains that she had a "reasonable expectation of continuing employment" and that this constituted a "constitutionally protected property interest" which Defendant Villagomez violated by "terminating" her without notice and a hearing.

A "reasonable expectation" is not the standard by which property rights are judged. "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). Due process merely requires that the state provide a fair procedure before depriving an individual of a protected liberty or property interest. Property interests are defined by state law. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).

Plaintiff's expectation of continuing employment may or may not have been reasonable. Even if reasonable, her "abstract need or desire," or "unilateral expectation" of continuing

employment did not rise to the level of a "legitimate claim of entitlement."

In addition, Defendant Villagomez did not terminate or discharge Plaintiff. Plaintiff's appointment had expired by its own terms. As her term had expired, Plaintiff had no property interest in continuing employment and was not entitled to notice and hearing.

Defendants are entitled to judgment as a matter of law on Plaintiff's due process claims.

## VIII. ESTOPPEL

Relying on the statements made by Mssrs. Dollison, Tenorio, and Gibson, Plaintiff argues that the Commonwealth is estopped from "terminating" her from the Special Assistant position except for cause.

In support of her argument, Plaintiff cites several Federal cases, all involving applications of estoppel against the Federal government. Defendants do not argue that the old rule that the government is not subject to estoppel does not have exceptions, one of which is to prevent manifest injustice. There is a Commonwealth case which is particularly in point.

In the case of *In re Blankenship*, 3 N.M.I. 209, the Commonwealth Supreme Court addressed estoppel against the Commonwealth government. In that case Blankenship sent a letter requesting application forms to sit for the Commonwealth bar examination and a copy of the Rules of Admission. The Clerk sent same to Blankenship. Blankenship's subsequent application was denied because it was filed too late for one exam date and too early for the next. Over the next few months the Clerk supplied Blankenship with two other copies of the Rules of Admission, at his request. Rule of Admission No. 2(e) states that an applicant for the Commonwealth bar "shall have graduated from a law school." It developed that Blankenship did not graduate from a law school accredited by the American Bar Association or the American Association of Law Schools. A statute, 1 CMC 3602(c), requires that applicants for the Commonwealth bar must have graduated from a law school accredited by one of these two organizations. Blankenship's subsequent re-application was denied for his failure to meet the statutory requirement. Blankenship sued, asserting that the Commonwealth was estopped from denying his application

because of the failure of the Clerk to send him a copy of the applicable statute when he had requested the requirements for sitting for the bar.

The Court denied Blankenship's Petition for Rehearing from the denial of his application. The Court found that estoppel requires the presence of four elements: 1) the party to be estopped must be apprised of the facts; 2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; 3) the other party must be ignorant of the true state of facts, and 4) he must rely on the conduct to his injury. *Id.*, at 215.

The Court stated:

> "Even if Blankenship believed he qualified for admission to the Commonwealth bar based on the information sent him by the Clerk, appellant's expectation cannot supersede the intent of the applicable statutes...
>
> "Appellant's ignorance was not of the facts, but of the law governing admission to the Commonwealth bar. Appellant's ignorance of the law cannot support his purported reliance in light of the maxim that one is presumed to know the law. The fact that appellant's ignorance of the law allegedly arose from the information sent him by the Clerk does not alter the analysis. Rarely will estoppel lie for the omissions or negligence of a public official... unless the party seeking to estop the government establishes affirmative misconduct beyond mere negligence. (Citations omitted).

*Id.*

In this case ignorance of the law precluded Blankenship's reliance on the doctrine of estoppel. In the case at bar, the parties can hardly be faulted for ignorance of the law, as the law was and is not known. In *U.S. v. Georgia Pacific Co.*, 421 F.2d 92 (9th Cir. 1970), a case cited by Plaintiff, there is an excellent discussion of various estoppel formulations:

> "Equitable estoppel is a rule of justice which, in its proper field, prevails over all other rules. *City of Chetopa v. Board of County Com'rs.*, 156 Kan. 290, 133 P.2d 174, 177 (1943). An equitable estoppel will be found only where all the elements necessary for its invocation are shown to the court. The test in this circuit was reiterated in *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104, 84 A.L.R.2d 454 (9th Cir. 1960):
>
> 'Four elements must be present to establish the

> defense of estoppel: (1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury. *California State Board of Equalization v. Coast Radio Products*, 9 Cir., 228 F.2d 520, 525.'FN4

> FN4. In a more recent case, *United States for Use and Benefit of Fogle v. Hal B. Hayes & Associates, Inc.*, 221 F.Supp. 260, 264 (N.D.Cal.1963), the test as set out in Hampton, supra, was restated to require: (1) A false representation or concealment of a material fact or facts; (2) Knowledge on the part of the defendant of the true fact or facts; (3) Lack of knowledge and an absence of means of securing knowledge of the true facts, on the plaintiff's part; (4) An intent on the part of the defendant that the representation or concealment be acted upon by the plaintiff; and (5) Actual reliance by the plaintiff on the representation or concealment. (See cases cited therein.)

> Other authorities rely on a somewhat different statement of analogous elements in order to make out a defense of equitable estoppel. One test that is followed in varying form is that set out in 3 Pomeroy § 805, at 191-192:

>> 1. There must be conduct- acts, language, or silence- amounting to a representation or a concealment of material facts. 2. These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. 3. The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when such conduct was done, and at the time when it was acted upon by him. 4. The conduct must be done with the intention or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. There are several familiar species in which it is simply impossible to ascribe any intention or even expectation to the party estopped that his conduct will be acted upon by the one who afterwards claims the benefit of the estoppel. 5. The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. 6. He must in fact act upon it in such a manner as to change his position for the worse; in other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done by reason of the first party being permitted to repudiate his conduct and assert rights inconsistent with it."

> *Id.*, at 96.

What runs through all of these formulations is the element of active deceit in the circumstances surrounding the original transaction on which the later estoppel claim is based. The party sought to be estopped must have made some sort of deliberate misrepresentation, or remained silent when there was a duty to speak, or taken some other kind of action with the object of producing some response in the party later asserting the estoppel. At the time this happened the party to be estopped must have known of the "true" state of affairs.

Examining the actions of the governmental actors in this case, there is a complete lack of any kind of scienter. Mr. Dollison questioned whether Plaintiff wanted to give up her Special Assistant position because it was "protected by the Constitution." There is not one shred of evidence that Mr. Dollison "knew" that Plaintiff might lose her job with the change of administrations. In response to some inquiry from the Court about the constitutional protection being limited to the Babauta-Benavente administration, he responded that she could only be removed for cause. There was apparently some further inquiry from the Court as to whether the Attorney General would defend Plaintiff from possible job loss (this is not clear) and Mr. Dollison responded in the affirmative. There is no evidence that any of these statements were knowingly false. It is just as likely, if not more so, that Mr. Dollison was actually trying to assist Plaintiff by questioning whether she would want to give up a position that he obviously thought granted her more protection than a civil service job would. To believe that an officer of the court would make deliberate misrepresentations of this nature, both to a litigant and to a sitting judge, without any evidence beyond the statements made, is to attribute a level of mendacity to Mr. Dollison totally unsupported by the record. Mr. Dollison could not have known that these statements would later be questioned as deliberate misrepresentations because the truth or falsity of the statements depends on the state of the law, and the law was unclear at that time. It still is.

Mr. Tenorio and Mr. Gibson merely confirmed to Plaintiff that she could only be removed for cause. This is a correct statement of fact. That is what the Constitution states. Once again,

there is no evidence of any kind of deliberate misstatement. Are we to believe there was a vast conspiracy to place Plaintiff in a position and pull the rug out from under her four years later? This is ridiculous. How were they to know what a new administration would do? Like Mr. Dollison, they did not know the legal effect of "removed for cause." We still don't. Where is the misstatement of facts made by one with true knowledge of the facts? It is utterly impossible in this case.

The problem here lies in the unthinking assumptions of the participants. Both Plaintiff and the Commonwealth employees viewed the "removal for cause" language as providing some protection for Plaintiff. And it does, just not the kind of protection which the participants contemplated. No one bothered to think their way through it, to consider the nature of the job, to consider the effect of a change of administrations, to consider the unlikelihood of a lifetime cabinet position created in the Constitution. At most, the actions of government employees were negligent. In *Blankenship*, supra, the Court stated: "Rarely will estoppel lie for the omissions or negligence of a public official, *Jeems Bayou Fishing & Hunting Club v. United States*, 260 U.S. 561, 43 S.Ct. 205, 67 L.Ed. 402 (1923), unless the party seeking to estop the government establishes affirmative misconduct beyond mere negligence. *In re Howell*, 120 B.R. 137 (9th Cir.BAP 1990).

In addition, Plaintiff was apprised of the "true facts" of the length of her appointment before any of these representations were made. Plaintiff admits to receiving the Conditions of Employment "when I signed them." (The Conditions were signed 4/25/02). She admits to having received the Request for Personnel Action and the Notice of Personnel Action on or about July, 2002, or later. (Ex. 9, Ans. 4). All of these papers were signed and completed almost contemporaneous with any of the representations made to Plaintiff now complained of. The Request for Personnel Action and Notice of Personnel Action state on their face that the term of the appointment is from 4/8/02 until 4/8/06. So, regardless of any representations made by government employees, Plaintiff had been informed, through these papers from the same government which Plaintiff now claims is trying to cheat her, of the limited term of her

14

1

2  **appointment.**

3  Neither has Plaintiff shown that she suffered any injury by remaining as Special Assistant.
4  Plaintiff assumes, without offering any evidence, that there was a lateral transfer civil service job
5  available to her at the time. Plaintiff has made no showing that any such job was available, and that
6  Plaintiff could have had it for the asking. There is, therefore, no evidence that any reliance Plaintiff
7  might have had to the statements of the Commonwealth employees was to her detriment or injury.

8  **IX. QUALIFIED IMMUNITY**

9  Defendant Villagomez now moves the Court for summary judgment on the issue of qualified
10  immunity. Qualified immunity shields public officials from liability if their actions did not "violate
11  clearly established statutory or constitutional rights of which a reasonable person would have known."
12  *Harlow v. Fitzgerald*, 457 U.S. 800, 818. 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In analyzing
13  claims of qualified immunity courts ask whether the plaintiff has asserted the violation of any
14  constitutional or statutory right at all. If so, then the question becomes whether the right was clearly
15  established at the time of defendant's actions. *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789,
16  1793, 114 L.Ed.2d 277 (1991).

17  Plaintiff has not shown that she had a property right in her position as Special Assistant. She
18  may or may not have such a right. That is for the Court to determine. If she has no property right, then
19  qualified immunity is unnecessary. If she does have such a right, then it was not clearly established at
20  the time Defendant Villagomez sent the letter to Plaintiff informing her that she must vacate the office of
21  Special Assistant for Women's Affairs, or took any other actions leading to her removal from that
22  office..

23  Defendant Villagomez avers that there was no case law interpreting the meaning of the phrase
24  "removed for cause" as applied to Plaintiff's unique position. Defendant Villagomez further points out
25  that in the mandatory retirement age/civil service line of cases, which turn on the relationship of
26  removal for cause constitutional provisions to tenure in such positions after passage of mandatory
27  retirement age legislation, the majority rule is that "removal for cause" constitutional provisions do not
28

15

1

2   establish tenure in such positions. No Ninth Circuit cases were found interpreting "removal for cause"

3   provisions in state constitutions.

4   Defendant Villagomez further avers that the papers documenting the placing of Plaintiff in the

5   position of Special Assistant for Women's Affairs indicate a fixed term for her appointment. It was not

6   unreasonable for Defendant Villagomez to rely on such government documents. In light of all the above,

7   it cannot be said that Defendant Villagomez violated Plaintiff's clearly established constitutional or

8   statutory rights of which a reasonable person would have known.

9   Defendant Villagomez is entitled to qualified immunity as a matter of law.

## X. BREACH OF CONTRACT

11   In Plaintiff's Fifth Cause of Action, Plaintiff sets forth an action for violation of the covenant of

12   good faith and fair dealing implicit in her contract by terminating Plaintiff without cause and a hearing.

13   As discussed above, Plaintiff had no constitutionally protected property right in employment after

14   the expiration of her contract. Any contract Plaintiff had expired of its own terms after being fully

15   performed by all parties.

16   Defendants are entitled to summary judgment as a matter of law on this claim.

## X. CONCLUSION

18   Plaintiff's Motion for Partial Summary Judgment should be denied in all respects.

19   Defendants' Motion for Summary Judgment should be granted based on the above analysis.

20   Plaintiff has wholly failed to show the requisites of any legitimate constitutional claim and her contract

21   with the Commonwealth had expired.

22   The doctrine of estoppel is not applicable to this case for the reasons hereinbefore stated.

23   Defendant Villagomez should be granted qualified immunity for his actions surrounding

24   Plaintiff's surrender of the office of Special Assistant for Women's Affairs. Plaintiff has not shown that

25   Defendant Villagomez violated any clearly established constitutional or statutory rights of Plaintiff.

26                                          Respectfully submitted,

27

28

```
                                        /s/  David Lochabay
                                        David Lochabay
                                        Asst. Attorney General
                                        Office of the Attorney General
                                        Attorneys for Defendants
```

### CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been e-filed this 1st day of February, 2008, with service requested to Douglas F. Cushnie, attorney for Plaintiff.

```
                                        /s/  David Lochabay
```