Douglas F, Cushnie
P.O. Box 500949
Saipan MP 96950
Telephone: (670) 234-6830
Facsimile: (670) 234-9723
E mail: abogados@pticom.com

Attorney for: Plaintiff

FILED
Clerk
District Court

FEB 14 2008

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| EMERENCIANA PETER-PALICAN,<br><br>    Plaintiff,<br><br>vs.<br><br>GOVERNMENT OF THE COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, and TIMOTHY P. VILLAGOMEZ, in his official and individual capacities,<br><br>    Defendants. | CIVIL ACTION NO. 07-0022<br><br>PLAINTIFF'S REPLY AND RESPONSE MEMORANDUM<br><br>Date : February 28, 2008<br>Time: 9:00 AM<br>Judge: A. Munson |

## REPLY

### I. Termination of Employment.

  Defendants have raised several arguments in response to plaintiff's argument regarding her termination from employment. They will be considered essentially in the order presented.

  A. Defendants assert that by referencing the legislative history the plaintiff tacitly admits that the Article III, §22 is ambiguous. Defendants are grasping at straws. Plaintiff specifically stated (Memo., p.5) that reliance on the legislative history is not necessary, because the provision is not ambiguous. But if the legislative history were examined it would support Emi's position. Of course it does.

  B. Defendants now embark on a series of policy arguments, none of which find

-1-

any support in the CNMI Constitution. The first of these is that the position is a cabinet level one and the governor is entitled to select his own team ..."different governors would likely have different views as to how to treat women's issues." (Def. Memo, p.3). That argument ignores the clear wording of the Constitution. Section 22b) provides that it is the responsibility of the special assistant to "implement a policy of affirmative action in the government and private sector to assist women to "achieve social, political and economic parity." The special assistant shall promote the interests of women, assist agencies of government and private organizations to plan and implement programs and services for women, monitor compliance of laws and regulations by government agencies and private organizations..." The Constitution is so specific it is difficult to imagine how improving the position of women in society can be logically related to the politics of the incumbent administration. Is sexual harassment all right for one party but not for another. Is equal pay for equal work a non-starter for one party and not for another. Politics and personalities have no place in this particular position. The goal is to promote the interests of women. Not just women of one political party or race or religion. That such is in fact the historical case will be seen below.

  C. The next argument is that the governor would have no control over a cabinet position if the individual is not hired by the incumbent governor. There is no basis for such an assertion. Obeying the governor is not a matter of friendship or political party. It is based upon the hierarchal system of government, with the governor being at the summit of the executive branch. The governor may give direction and a member of the cabinet should obey all lawful orders in fulfilling the responsibilities of the position.

  D. The next argument is that tenure is not the same as termination for cause, citing the case of *Bonnette v. Karst*, 261 La. 850, 261 So.2d 589 (La. 1971). The case is certainly distinguishable on its facts, the firefighters involved being civil service

-2-

employees, not exempt civil service as was Emi, and further pulled this particular group of firefighters who worked in cities of up to 250,000 population and treated them differently. Other factors such as impact upon the state pension system and advancement of young firefighters and ability to do the job by older men also came into play, none of which is present here. After going back and forth on the matter the final majority decision cites cases in other state jurisdictions as supposedly in support of its position. A reading of the dissent (So.2d, p.609) is worthwhile as it methodically picks apart the cases relied upon by the majority.

E. The next argument is that there is nothing in the constitution that prevents appointment for a set term. The immediate response to that is that there is nothing that authorizes it either. Since Article III, § 23 establishing indigenous affairs does set a specific term of four years, and the amendment was considered at the same time as § 22, it is clear the drafters were well aware of the possibilities of a set term. In light of both § 22 and § 21 of Article III, the options regarding termination and tenure were clearly before the drafters and the voters.

It may be noted that Lt. Governor Villagomez in his February 6, 2006 letter sets forth the precise position that Emi advocates here. The last sentence of the second paragraph states:

> "It is not known why these documents seemingly contain a fixed term for your appointment, <u>but the ministerial actions of those responsible for completing the paperwork necessary to effectuate your appointment cannot and do not change the legal character of your appointment.</u>" (Emphasis Supplied).

Emi could not have put it better. Which leads to the next argument presented by the defendants.

F. Defendants argue, notwithstanding the Lt. Governors's position, that Emi was appointed for a term. The argument is based upon personnel actions created to implement or "effectuate" as the Lt. Governor would put it, the appointment to the

-3-

special assistant position. First, the letter appointing Emi refers to the constitution and no term is set. Second, the personnel actions do nothing more that permit Emi to be paid and have the proper deductions made from her salary. This is clear from the declaration of Juan I. Tenorio filed with this memorandum. Mr. Tenorio was the personnel officer responsible for processing all government employees and the forms upon which the government relies to set a term of office are nothing more than standard form personnel documents are not intended to and do not establish a term of office. What the government is really arguing here is that some personnel clerk filling out a personnel form to effectuate the appointment to office can determine tenure and , termination in violation of statute and constitution.

    Mr. Tenorio also points out, that Ana Teregeyo, the immediate predecessor to Emi in the special assistant office held the position through at least two governors. It would appear that prior administrations accepted the clear constitutional mandate for what it is. No termination without cause. Ms. Teregeyo resigned, thus the position opened up as Governor Babauta pointed out in his letter.

    The government argues that the new administration wants to reward its own people. No doubt this is true and is well known in the community. That is politics. Is it not clear, however, that this is the very thing that the drafters of the constitution wanted to stop. There should be no political interference in women's affairs.

**II. Estoppel.**

    The government accepts the factual situation that occurred regarding the representations made to Emi. The government's position is that the theme running through cases involving government estoppel is mendacity or evil intent on the part of the government or its actors. Further, since Emi cannot show that any of the three government individuals were out to harm her, she has no case. It is submitted that such is not the rule. The standard in considering equitable estoppel with respect to a

-4-

1  government is enforcement of justice and fair play. A government is supposed to act
2  honestly and fairly, and where it doesn't whether by design or inadvertence and a
3  person relies upon that conduct and is harmed by it, the government is estopped from
4  maintaining that position. That is what Emi's cases cited in her opening brief clearly
5  show.
6      Both parties here cited *In re Blankenship*, 3 N.M.I. 209 (1992), Emi for the
7  proposition that the Commonwealth acknowledges estoppel against the government and
8  the defendants that the facts in *Blankenship* preclude Emi's application of estoppel here.
9  The facts in *Blankenship* show an applicant to the bar filing an untimely application and
10 receiving upon requests from the clerk of court copies of admission rules. The
11 application was denied because the applicant did not graduate from an ABA accredited
12 law school. The applicant asserted estoppel because the statute was not sent to him by
13 the clerk when he requested the admission standards. The court held that Blankenship
14 was ignorant of the law, which he could have checked and did not. Emi's situation is
15 very different. Her review of the law shows a constitutional standard of termination
16 only for cause. No qualifications, term limits, political requirements or anything else.
17     Emi relied upon the factual assertions made by Mr. Dollison, Mr. Tenorio and
18 Mr. Gibson that she would not be terminated but for cause. The reason she would not
19 be terminated but for cause is that the constitution bars it. It must be remembered that
20 Emi already held the special assistant position at the time the factual representations
21 were made.
22     Defendant asserts that Emi assumes that the lateral transfer she requested would
23 be available. That a lateral transfer was or was not available is irrelevant. The point is
24 that Emi did not bother to apply for such a transfer from her special assistant position
25 because according to the government she would not be terminated without cause
26 because she could not be terminated without cause. Whether such a position existed
27
28     -5-

1  will probably never be known for sure because Emi was induced to not even apply.
2  The government is now arguing that Emi must prove the very issue that the
3  government's own conduct now precludes her from establishing. That is not fair play
4  and the defendants should not be permitted to now assert a position that is the precise
5  opposite of what she was told six years ago.

## RESPONSE

### I. 42 U.S.C. § 1983.

Emi has not claimed monetary damages against the Commonwealth or defendant Villagomez in his official capacity under this title.

### II. First Amendment.

Defendant's argument here is either totally disingenuous or exhibits a lack of understanding of the political process. Emi has stated that she was a vocal public supporter of former Governor Babauta, besides of course being a member of his administration. Politics is universally a process of rewarding your friends and punishing your enemies. That is certainly no where more clear than within the Commonwealth. Any juror taken at random off the street and told that Emi was a loud enthusiastic supporter of Governor Babauta would know immediately that she would lose her job as soon as her candidate lost. It is unlikely anyone in this community would think that such an event is any more unusual than the sun rising in the east and setting in the west.

### III. Fifth Amendment.

The Fifth Amendment allegation relates to property rights as made applicable through the Fourteenth Amendment and is considered in the discussion regarding property rights.

### IV. Liberty Interest.

The termination of plaintiff may only be for cause. Emi thus assumed at the

-6-

inception of this suit that there was some cause which led to her termination. Cause may include, conviction of a crime, failure to perform her job, incompetence, and the like. The fact of her termination was certainly known and the public would be aware that she had done something something wrong. The government now asserts that Emi in fact was not terminated for any cause, but that her employment lapsed as a result of an entry on a personnel action form. To the extent that the government maintains this position and publicly disavows any termination for cause the cause of action may not lie.

## V. Property Interest.

The government's position on this issue is not a correct statement of the law. The Fourteenth Amendment protects against the deprivation of property or liberty without procedural due process. *Carey v. Piphus*, 435 U.S. 247, 259, 98 S.Ct. 1042, 1050, 55 L.Ed.2d 252 (1978). A protected property interest in continued employment exists if one has a reasonable expectation or a legitimate claim of being entitled to it rather than a mere unilateral expectation. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2 548 (1972). State law defines what is and what is not property that is subject to the due process clause of the Fourteenth Amendment. A state law which limits the grounds upon which an employee may be discharged, such as conditioning dismissal on a finding of cause, creates a reasonable expectation of continued employment, and thus a protected property right. *Dorr v. County of Butte*, 795 F.2d 875, 876, 878 (9th Cir. 1986). By Commonwealth constitution Emi has a protected property right for which she is entitled to due process protection.

## VI. Qualified Immunity.

Government officials who perform discretionary functions are generally given qualified immunity from civil damage suits so long as the conduct of the official "does not violate clearly established statutory or constitutional rights of which a reasonable

-7-

person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Schwartzman v. Valenzuela*, 846 F. 2d 1209, 1211 (9th Cir. 1988). In determining whether the law was clearly established the contours of the right alleged to have been violated "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The action in question, however, need not be previously held unlawful. *Anderson*, 107 S.Ct. At 3039. Specific binding precedent is not required to show that a right is clearly established for qualified immunity purposes. *Ostlund v Robb*, 825 F.2d 1371, 1374 (9th Cir. 1987). It must be emphasized that the immunity being discussed here is from civil damage suits. Section 1983 plaintiffs who seek prospective injunctive relief against state officials who have immunity from damages have no immunity from actions for prospective injunctive relief. *Hoohuli v. Ariyoshi*, 741 F. 2d 1169, 1175-1176 (9th Cir. 1984).

  Turning now to the situation facing defendant Villagomez, at the time he took his action, he and his lawyers were faced with Article III, § 22 of the constitution which said in part that the "special assistant may be removed only for cause". No one needs any lawyer's sophistry to understand that plain language. If there was some apprehension about its meaning, the government lawyers could have gone into the legislative history. If they had done so they would have found the same thing Emi found. The original proposal made the special assistant's term co-terminous with that of the appointing authority. That was then changed after public hearing. Being in public office, and the Commonwealth being a fairly small place, Mr. Villagomez must also have known that Ms. Teregeyo held the position beyond a single administration. At least he would have know if he had been interested in checking what the past practice was in the position. Defendants point out that there is no case law construing Article III, § 22. That is true so far as Emi is aware. All the more reason for the public official

-8-

to inquire of the other available sources mentioned above. The standard in *Harlow* is what the reasonable person would have known. The conduct of defendant Villagomez was not reasonable. The action was taken in flagrant disregard of the constitution. To assert now that a personnel action trumps the constitution defies belief.

**VII. Breach of Contract.**

Defendant's argument here relies upon their earlier argument that Emi has no protected property right in her employment. As discussed above, this is wrong as a matter of law.

### CONCLUSION

Emi requests that this court grant her motion for partial summary judgment and deny defendant's motion for summary judgment.

Dated this 14th day of February, 2008.

Respectfully Submitted,

DOUGLAS F. CUSHNIE
Attorney for Emerenciana Peter-Palican

/s/
DOUGLAS F. CUSHNIE F108

-9-