FILED
Clerk
District Court

MAR -7 2008

For The Northern Mariana Islands
By_____
(Deputy Clerk)

UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

EMERENCIANA PETER-PALICAN,

    Plaintiff,

v.

GOVERNMENT OF THE
COMMONWEALTH OF THE
NORTHERN MARIANA ISLANDS, *et al.*,

    Defendants.

Civil Action No. 07-0022

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

    THIS MATTER came before the Court on Thursday, February 28, 2008, for hearing of Plaintiff's Motion for Partial Summary Judgment and Defendants' Cross Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. Defendants appeared through their attorney David Lochabay. Plaintiff appeared personally and through her attorney Douglas F. Cushnie. Having carefully reviewed the parties' briefs and the relevant legal authority, and having had the benefit of oral argument and good cause appearing, the court hereby GRANTS Plaintiff's motion and GRANTS IN PART and DENIES IN PART Defendants' cross-motion.

### BACKGROUND

    This case arises out of a dispute over the nature of a specific gubernatorial appointment. On April 5, 2002, Ms. Emerenciana Peter-Palican was appointed by then Governor Juan N. Babauta to the position of Special Assistant for Women's Affairs ("Special Assistant"). (Peter-

Palican Decl., Ex. 1.) The appointment was made pursuant to Article III, Section 22 of the Constitution of the Commonwealth of the Northern Mariana Islands ("CNMI"). (*Id.*)

On February 6, 2006, Ms. Peter-Palican was notified by the office of the newly-elected governor, Benigno R. Fitial, that her position was terminated as of January 8, 2006, the date that Governor Fitial's administration formally took office. (*Id.*, Ex. 5 (signed by Mr. Timothy P. Villagomez, Acting Governor).) The notification stated that her appointment automatically terminated when a new administration took office and that, in any case, her employment contract specifically expired after four years. (*Id.*) Ms. Peter-Palican objected to the termination but vacated her position on April 15, 2006. (*Id.* ¶ 12.)

On June 8, 2007, Ms. Peter-Palican filed the instant suit against the CNMI government and Mr. Timothy P. Villagomez, in his individual and official capacities. Ms. Peter-Palican alleges that her termination was without cause and in violation of the CNMI Constitution. In addition, pursuant to 42 U.S.C. § 1983, she claims that her termination violated her right to free speech and due process protected by the First, Fifth, and Fourteenth Amendments of the United States Constitution. Finally, Ms. Peter-Palican asserts causes of action for detrimental reliance and breach of contract and seeks monetary damages and reinstatement of her appointment. The Court will discuss additional specific facts as required in the analysis.

## ANALYSIS

There are two motions before the Court. First, Plaintiff and Defendants both move for summary judgment on the issue of whether Plaintiff was unconstitutionally removed from the Special Assistant position. In addition, Defendants move for summary judgment on the following issues: (1) whether Defendant Villagomez, in his individual capacity, has qualified immunity; and (2) whether Plaintiff has presented sufficient evidence to support the alleged violations of the United States Constitution and alleged breach of contract. The court finds that: (1) Plaintiff's removal violated the CNMI Constitution; (2) Defendant Villagomez, in his individual capacity, does not have qualified immunity; (3) Plaintiff's alleged deprivation of her

Fourteenth Amendment liberty interest is dismissed; and (4) genuine issues of material fact remain with respect to the other alleged violations of the United States Constitution and the breach of contract claim.

### A.     Rule 56 Summary Judgment Legal Standard.

Pursuant to Federal Rule of Civil Procedure 56(c), a moving party is entitled to a judgment as a matter of law "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact . . . ." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of establishing that there is no genuine issue of material fact, "that is, pointing out to the district court []that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Only where the moving party meets its burden of establishing that there is an absence of evidence to support the nonmoving party's case does the burden shift to the nonmoving party to present more than a scintilla of evidence in support of its position. Fed. R. Civ. P. 56(e) (once the moving party has met its burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial"); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] ruling on a motion for summary judgment . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

### B.     The Special Assistant May Only Be Removed For Cause.

Section 22 of the CNMI Constitution establishes the special assistant position and provides in pertinent part that "[t]he special assistant may be removed only for cause." CNMI CONST. art. III, § 22. The issue before the court is whether the "removal for cause" language in Section 22 means that the Special Assistant may only *ever* be removed for cause, or, may only be

removed for cause *during the term of her appointment*. The court finds that the clear language of Section 22 provides that the Special Assistant may only ever be removed for cause.[1]

### 1. Constitutional Construction Legal Standard.

The general rules of statutory construction are applicable to the construction of constitutional language. *People v. Bustamante*, 57 Cal. App. 4th 693, 699 (Ct. App. 1997) ("The rules of statutory construction are the same whether applied to the California Constitution or a statutory provision."). Under Ninth Circuit and CNMI law, "the starting point for interpreting a statute is the language of the statute itself. . . . If the statutory language is unambiguous, in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive." *U.S. v. Buckland*, 289 F.3d 558, 564–65 (9th Cir. 2002) (citations omitted); *accord State Bd. for Charter Schs. v. U.S. Dept. of Edu.*, 464 F.3d 1003, 1007–08 (9th Cir. 2006) ("When a natural reading of the statutes leads to a rational, common-sense result, an alteration of meaning is not only unnecessary, but also extrajudicial."); *Perroton v. L.G. Gray*, 958 F.2d 889, 893 (9th Cir. 1992) ("If the language of the statute is clear and unambiguous, judicial inquiry is complete and that language controls absent rare and exceptional circumstances."); *Town House, Inc. v. Saburo*, 6 N.M.I. 529, 531–32 (2003) ("We construe statutory language 'according to its plain-meaning, where it is clear and unambiguous.'. . . However, statutory language must be read in the context of the entire statute." (citations omitted)). Even where the statutory language is clear and unambiguous, the court must avoid interpretations that lead to absurd or impracticable results. *State Bd. for Charter Schs.*, 464 F.3d

---

[1] The CNMI Supreme Court has not interpreted Section 22 of the CNMI Constitution. This court has two options when it is required to make a ruling based on an issue of CNMI law that has not been addressed by the CNMI Supreme Court: (1) the court may certify the question for the High Court to rule on; or (2) the court may use established precedent as a guide to determine what it thinks the CNMI Supreme Court *would* decide if they did rule on the issue. *Fields v. Legacy Health Sys.*, 413 F.3d 943, 958 (9th Cir. 2005) ("We decline to exercise our discretion to certify these questions because 'controlling precedent,'. . . is available to guide us"). Here, the court will not seek certification of the issue because it finds sufficient controlling precedent to guide it.

at 1008 ("courts avoid natural readings that would lead to irrational results"); *Church of Scientology v. U.S. Dept. of Justice*, 612 F.2d 417, 421 (9th Cir. 1979).

### 2. The Language of Section 22 Is Clear and Unambiguous.

Here, Section 22 states that "[t]he special assistant *may be removed only for cause.*" CNMI CONST. art. III, § 22 (emphasis added). Defendants argue that the language is ambiguous because a reasonable person could interpret it in one of two ways: (1) that the Special Assistant may only *ever* be removed for cause, or (2) that the Special Assistant may only be removed for cause *during the Special Assistant's contractual term*. The court does not agree.

The plain meaning of Section 22 is that the Special Assistant may only ever be removed for cause. Defendants' alternative interpretation goes beyond the plain language of the constitution. *See De Castro v. Bd. of Comm'rs*, 136 F.2d 419, 425 (1st Cir. 1943)(explaining, but not holding, that "the court below went beyond the permissible limits of interpretation" when it held that the clear language "and shall hold office during good conduct" meant that "the tenure of the office of the city manager of the capital is that of four years, provided that during the same he observe good behavior."). Section 22 does not say that the Special Assistant may only be removed for cause during the contractual term, nor does it say that the Special Assistant may be removed for cause during the term of the appointing governor. The drafters could have limited the removal for cause language, but they did not. Indeed, the surrounding provisions in the CNMI Constitution explicitly refer to the "terms" of other gubernatorial appointees. Section 21 of the same article provides that "[u]pon the expiration of the term of a member of a board or commission, such person shall cease to be a member unless reappointed in the manner prescribed by law." CNMI CONST. art. III, § 21. In addition, Section 23 states that the "term of office [for the Resident Executive for Indigenous Affairs] shall be four years." *Id.* § 23. The court must presume that the drafters acted intentionally where they include a provision in one section and exclude it in another. *Estate of Bell v. Comm'r*, 928 F.2d 901, 904 (9th Cir. 1991).

In addition, the natural interpretation of Section 22 does not lead to absurd or

impracticable results. Defendants assert that it is absurd to allow the Special Assistant to serve under multiple administrations because the position is a political one and responsible for implementing the policies of the current administration. (Opp./Cross-Mot. at 3.) Although Defendants' argument may support the conclusion that granting the Special Assistant life tenure is unfortunate, it does not support the conclusion that it is absurd or impracticable. *See Oregon Natural Res. Council*, 99 F.3d 334, 339 (9th Cir. 1996) (unfortunate results are not equivalent to absurd results).

Moreover, even if the result were "absurd," the court would look to the drafting history to determine the intent of the language. Here, the constitutional delegates considered a proposed draft of Section 22 that subjected the Special Assistant's term to the pleasure of the governor. CNMI 2nd Constitutional Convention, Delegate Proposal No. 121-85 (June 22, 1985) (previous draft proposal stating that the Special Assistant "shall serve at the pleasure of the governor, . . . ."). However, the proposal was ultimately replaced with clear language making the Special Assistant removable only for cause. The court cannot conclude that the drafters contemplated making the Special Assistant's term *explicitly* subject to the will of the governor, but instead chose to *implicitly* subject the position to the will of the governor. The conclusion is illogical. *Perroton*, 958 F.2d at 894 ("The . . . theory, thus, is reduced to nonsense. It would have Congress deleting its earlier amendment, which *expressly added* the [language], and instead have the legislature choosing to *impliedly* include [the language] through a number of other scattered provisions . . . !" (emphasis in original)).

In sum, Section 22 is plain and unambiguous and provides that the Special Assistant may only ever be removed for cause. Moreover, the natural meaning is supported by the surrounding constitutional provisions and the drafting history of Section 22.

### 3.  Plaintiff Was Removed Without Cause.

Here, Plaintiff was removed from the Special Assistant position without cause. Defendants assert that Plaintiff was not "removed without cause" but rather, that her contract

simply expired and was not renewed. Defendants offer Plaintiff's personnel records as evidence of the alleged contract term. (Peter-Palican Decl., Exs. 2, 3.) However, a contractual term cannot supersede a clear constitutional mandate and any alleged contract term was in conflict with Section 22 and therefore invalid. Moreover, Defendants concede that, insofar as Plaintiff was "removed," she was removed without cause. (Hearing On Motions For Summary Judgment.) Finally, Plaintiff did not willingly vacate her position. (Peter-Palican Decl., Ex. 6.) Accordingly, Plaintiff was removed without cause in violation of Section 22 and Plaintiff's motion is GRANTED and Defendants' motion is DENIED on this issue.[2]

---

[2] Defendants assert multiple additional arguments to persuade the court to read a different meaning into the plain language of Section 22. The court rejects each. First, Defendants argue that every other person that has been appointed to the position of Special Assistant has not questioned the expiration of their appointment when the appointing administration left office. (Defendants' Reply, Exs. 1–7.) However, the fact that a constitutional right has never before been asserted does not mean that it does not exist.

Second, Defendants argue that this case is analogous to *Bonnette v. Karst*, 261 La. 850 (1971) where the Louisiana Supreme Court held that "during good behaviour" did not confer life tenure. The case is distinguishable. In *Bonnette*, the language "during good behaviour" was found within a constitutional section entitled "Corrective and Disciplinary Action for Maintaining Standards of Service." *Id.* at 882. The court concluded that "[i]n context, the phrase simply means that during civil service tenure, the employee shall not be removed by disciplinary proceedings except for cause, and the causes for disciplinary removal are then expressly set forth." *Id.* at 885.

Here, the removal language is not found within a separate disciplinary section. Instead, it is a simple, isolated sentence that comprehensively addresses how and when a Special Assistant may be removed. There is no context similar to that in *Bonnette* that would lead to the conclusion that the sentence was only referring to disciplinary actions.

Finally, Defendants urge the court to apply *Chevron* deference to Governor Fitial's interpretation of the CNMI Constitution. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). The *Chevron* doctrine provides, in brief, that a court must defer to an agency's interpretation of a statute where: (1) an agency interprets a statute that it is charged with administering; (2) the statute is ambiguous or does not address the precise question at issue; and (3) the agency's interpretation is reasonable. *Id.* at 842–43. However, the doctrine does not apply where the language of the statute is clear. *Id.* at 843 ("If the intent of Congress is clear, that is the end of the matter."). Here, the precise issue at question—how the Special Assistant may be removed from office—was addressed clearly in Section 22. In addition, the governor does not have an expertise akin to the expertise of agencies that would warrant the application of *Chevron* deference to the governor's interpretation.

C.  **Defendants' Cross-Motion For Summary Judgment.**

  1.  **Plaintiff's U.S. Constitutional Claims.**

   a.  **Plaintiff's First Amendment Claim.**

Defendants argue that Plaintiff has not presented any evidence to support the alleged First Amendment violation and the claim should be dismissed as a matter of law. "Public employees suffer a constitutional violation when they are wrongfully terminated or disciplined for making protected speech. . . . To state a First Amendment claim against a public employer, an employee must show: 1) the employee engaged in constitutionally protected speech; 2) the employer took 'adverse employment action' against the employee; and 3) the employee's speech was a 'substantial or motivating'" factor for the adverse action. . . ." *Marable v. Nitchman*, 511 F.3d 924, 929 (9th Cir. 2007) (citations omitted).

Here, Plaintiff claims that she loudly and enthusiastically supported Governor Fitial's opponent in the gubernatorial election and that her termination was a result of this conduct. (Plaintiff's Answer to First Set of Interrogatories, No. 6 ("I was very active and vocal in the gubernatorial campaign which Governor Fitial won. I supported Governor Babauta publicly, attending and participating in rally's [sic], street demonstrations, and soliciting votes.").) Vocal advocacy of a political candidate is unquestionably protected speech under the First Amendment. *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003) ("An employee's speech is protected under the First Amendment if it addresses 'a matter of legitimate public concern.'"). A reasonable jury could conclude that Plaintiff's termination was because of her alleged speech. *Anderson*, 477 U.S. at 248 (a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."). In sum, there are genuine issues of material fact regarding Plaintiff's First Amendment claims.

Accordingly, Defendants' motion with respect to Plaintiff's First Amendment claim is DENIED.

   b.  **Plaintiff's Fourteenth Amendment Due Process Claims.**

    (1)  **Plaintiff's Liberty Interests.**

Defendants assert that Plaintiff fails to present evidence sufficient to support her claim that she was deprived of a liberty interest protected by the Fourteenth Amendment. Plaintiff

responds that "[t]o the extent that [Defendants concede that there was no "cause" for Plaintiff's removal,] the cause of action may not lie.". (Plaintiff's Reply at 7.) Defendants do concede that Plaintiff was not removed for cause. (*See* Hearing On Motions For Summary Judgment.) Accordingly, because Plaintiff appears to concede that the cause of action will not lie, Defendants' motion with respect to Plaintiff's liberty interests is GRANTED.

### (2)  Plaintiff's Property Interests.

Defendants also assert that Plaintiff fails to present evidence sufficient to support her claim that she was deprived of a property interest protected by the Fourteenth Amendment. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount." *Bd. of Regents v. Roth*, 408 U.S. 564, 569–70 (1972). "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. These interests-property interests-may take many forms." *Id.* at 576. A person has a property interest in a benefit if she has "a legitimate claim of entitlement to it." *Id.* at 576. Here, Plaintiff had a legitimate claim of entitlement to her constitutionally created position and was entitled to some sort of procedure to contest her removal. *Id.* at 578; *Dorr v. Country of Butte*, 795 F.2d 875, 876 (9th Cir. 1986).

Accordingly, Defendants' motion on the issue of Plaintiff's property interests under the Fourteenth Amendment is DENIED.

### 2.  Breach of Contract.

Defendants argue that because Plaintiff was not "removed" from her position and she served her entire four year term that there was no breach of contract and Defendants could not have breached the covenant of good faith and fair dealing. (Opp./Cross-Mot. at 15.) However, the court has held that Plaintiff was "removed." Accordingly, there are genuine issues of material fact regarding the alleged breach of contract and Defendants' motion on the issue is DENIED.

### 3. Qualified Immunity.

Defendant Villagomez, in his individual capacity,[3] moves for summary judgment on the issue of qualified immunity. (Opp./Cross Mot. at 14.) Defendant Villagomez does not state which claims he seeks qualified immunity from. However, the motion only argues for immunity arising out Plaintiff's alleged property right arising out of the CNMI Constitution. (*Id.*)

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The court must first determine whether the plaintiff has alleged a constitutional violation. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). If a constitutional violation has been properly alleged, then the court must determine whether the conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* A right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, . . . but it is to say that in light of pre-existing due process law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

In *Anderson*, the Court explained that although the "right to due process" is "clearly established," the contours of that right may not be sufficiently clear depending on the circumstances of the violation. *Id.* at 639. Instead, a court would need to analyze the objective circumstances of the violation in light of pre-existing law to determine whether the official should have known that the action was unconstitutional. *Id.* Similarly, the Court held that "the right to be free from warrantless searches of one's home unless the searching officers have probable cause and there are exigent circumstances" was clearly established law. *Id.* at 640. However, the law regarding what amounts to "probable cause" or "exigent circumstances" is not necessarily "clearly established" in every circumstance. *Id.* at 641. In sum, a public official has

---

[3] Qualified immunity cannot be claimed in an official-capacity action. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985).

qualified immunity unless the law is clear on its face or a lack of clarity has been elucidated in the case law.

Here, the court has held that Plaintiff had a legitimate claim of entitlement to her constitutionally created position and was entitled to some sort of procedure to contest her removal. *Bd. of Regents*, 408 U.S. at 578; *Dorr v. Country of Butte*, 795 F.2d 875, 876 (9th Cir. 1986). Accordingly, Plaintiff has alleged a constitutional violation.

Defendant Villagomez argues that the right was not "clearly established" because there was no case law on the issue. In addition, he claims that he acted in reasonable good faith based on the past acts of previous Special Assistants and governors. However, in contrast to "due process," "probable cause," and "exigent circumstances," the concept of "removal without cause" is not an ambiguous one that requires evolution with each new set of facts. Defendant Villagomez was in possession of the plain language of the CNMI Constitution. It is of no import that the language had not been judicially interpreted since it is clear and unambiguous on its face. In addition, Defendant Villagomez' subjective beliefs are irrelevant. *Anderson*, 483 U.S. at 641. The inquiry is an objective one. Objectively, the language of the constitution clearly limited the removal of the Special Assistant to *only for cause* and Plaintiff had a right to some procedure under the due process clause of the Fourteenth Amendment.

In sum, a reasonable person would have known that Plaintiff could only be removed for cause and that Plaintiff was entitled to some procedure before she could be constitutionally removed from the position. Accordingly, Defendant Villagomez, in his individual capacity, does not have qualified immunity with respect to monetary damages arising out of the alleged violation of Plaintiff's property interests protected by the U.S. Constitution and Defendants' motion with respect to qualified immunity is DENIED.[4]

---

[4] Defendants also argue that neither the CNMI nor Defendant Villagomez in his official capacity are "persons" within the meaning of § 1983 and thus cannot be sued for monetary damages under the statute. (Opp./Cross-Mot. at 6–7.) However, Plaintiff does not seek monetary damages under § 1983 against either the CNMI or Defendant Villagomez in his official capacity. (Reply at 6.) The motion is accordingly moot.

## CONCLUSION

In sum, the court makes the following findings:

1. Plaintiff was removed from her position as Special Assistant in violation of the clear language and intent of Section 22 of the CNMI Constitution. Accordingly, Plaintiff's motion for summary judgment is GRANTED and Defendants' motion on this issue is DENIED;

2. Defendant Villagomez, in his individual capacity, does not have qualified immunity with respect to monetary damages arising out of Plaintiff's property interests in her Special Assistant position and Defendants' motion for summary judgment on the issue of Defendant Villagomez' qualified immunity is DENIED;

3. Defendants' motion with respect to Plaintiff's alleged Fourteenth Amendment deprivation of her liberty interest is GRANTED; and

4. Genuine issues of material fact remain with respect to Plaintiff's: (1) First Amendment claim; (2) Fourteenth Amendment claim arising out of Plaintiff's property interest in her position; and (3) breach of contract claim;

**IT IS SO ORDERED.**

Dated:        March 7, 2008

*/s/ Alex R. Munson*
ALEX R. MUNSON
UNITED STATES DISTRICT JUDGE